IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No._____

ALAN JENSEN
MELINDA MCWILLIAMS
    Plaintiffs,

v.

TOWN OF FRASER,
    Defendant.

## **COMPLAINT**

## **INTRODUCTION**

1. Plaintiff Alan Jensen, resident of Fraser, wishes to display three pieces of political art designed by Plaintiff Melinda McWilliams in his front yard to protest President Donald Trump and call for action on global warming. In response, the Town of Fraser has threatened to enforce its unconstitutional sign code ("Code") against Plaintiffs, chilling their protected speech.

2. The Code is expansive and applies to all signs erected on private property within the Town. It prescribes myriad regulations for certain signs, including limits on the size, placement, type, duration, and number of signs.

3. Yet even while substantially restricting certain signs, the Code exempts particular categories of signs based on their content and fails to narrowly tailor the restrictions to any compelling or substantial interest. Therefore, the Code is an unconstitutional content-based restriction that violates the Free Speech Clause of the First Amendment and article II, section 10 of the Colorado Constitution, both on its face and as applied to Plaintiffs.

1

4. The Code's categories are also poorly defined and substantially overlap, leaving residents in the dark as to whether a desired sign or artwork will trigger threats of prosecution. Therefore, the Code is also unconstitutionally vague, in violation of the Due Process Clause and article II, section 25 of the Colorado Constitution.

5. In this action, Plaintiffs ask this Court, pursuant to 42 U.S.C. § 1983, for immediate injunctive relief to stop Fraser from invoking or relying on the Code to violate Mr. Jensen and Ms. McWilliams' constitutional right to post political works of art on Mr. Jensen's property. Plaintiffs also seek a declaratory judgment, a permanent injunction, and nominal damages.

## JURISDICTION AND VENUE

6. This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

7. This Court has jurisdiction to issue the declaratory relief requested pursuant to the Declaratory Relief Act, 28 U.S.C. §§ 2201, 2202.

8. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). The Defendant resides within the District of Colorado, and the events described in this Complaint occurred in the District of Colorado.

## PARTIES

9. Plaintiff Alan "AJ" Jensen is a resident of Fraser. Plaintiff Melinda McWilliams created political displays that Mr. Jensen and she want to post on Mr. Jensen's property.

10. Defendant Town of Fraser is a statutory municipality. It adopted and enforces the Code that is challenged in this case. It is the policy and practice of Fraser—through the actions of

its Town Manager—to interpret and enforce the Code in the unconstitutional manner that is described and challenged in this Complaint.

11. The acts and omissions of the Town of Fraser are carried out under color of state law.

## FACTUAL BACKGROUND

### The Challenged Code

12. The Town of Fraser, Colorado, regulates signs on private property through chapter 19, article 6 of the Fraser Municipal Code, titled "Signs."

13. The Code applies to all signs on private property throughout the town. Fraser, Colo., Mun. Code § 19-6-130. The Code establishes regulations for different signs based on the property's zoning district. *Id.* § 19-6-310. These regulations can include size, duration, placement, type, and numerical restrictions. *Id.* Residents wanting to post signs must bring the signs before Town officials to receive a permit prior to posting the sign. *Id.* § 19-6-210. A permit costs $40. *Id.* app. A.

14. However, the Code exempts certain types of signs entirely from regulation. *Id.* § 19-6-250. These signs do not have to meet any number, size, placement, duration, or material requirements, nor are they subject to the Code's permit requirement. *Id.* For example, town, country, state, or federal government signs; signs related to public purposes or safety as required by law; signs on parked motor vehicles; or athletic scoreboards are exempted from regulation. *Id.*

15. Three exempted categories are defined by their content: (1) "[t]emporary decorations or displays, if they are clearly incidental to, customarily, or commonly associated with any

3

national, state, or local holiday or religious celebration, (2) "works of art and murals," and (3) "public purpose/safety signs[s]" as required by law. *Id.*

16. Number, type, placement, and material restrictions are determined by the property's zoning area. *Id.* tbl. 6.1.  A residential property owner whose property is not vacant or under construction can put up:

> a. One permanent sign per street frontage, which can be either (1) a wall sign under six square feet and placed below the eave or parapet line or (2) a projecting sign under six square feet, placed no higher than the wall, and at least 8 feet above the ground;
>
> b. One swing sign per street frontage, which must be under six square feet and placed no higher than six feet above the ground; and
>
> c. One yard sign per street frontage, which must be under six square feet, must be placed no higher than four feet above the ground, and may only be put up for a maximum of 90 days. *Id.*

17. Section 1-4-10 of the Fraser Municipal Code provides that violation of any provision, including the Code, is punishable by imprisonment up to one year and a fine of up to $2,650.00. *Id.* § 1-4-10.  Each day that a violation persists constitutes a separate violation. *Id.*

18. In this action, Plaintiffs bring facial and as-applied challenges to the Code.  Plaintiffs seek relief from the challenged prohibitions of the Code as written and also as Fraser interprets and enforces those prohibitions.

Enforcement of the Challenged Code against Mr. Jensen and Ms. McWilliams

19.  In January 2017, Mr. Jensen erected communicative displays on a flag pole in his yard that protested the election of President Donald Trump and called for action on global warming.  Over the following year and a half, he added more displays, until there were eight politically-expressive two-sided displays on his property.



20. The five large displays—"Save our planet," "Trump sucks," "Make America smart again!", "Impeach the Putin puppet," and "Gotta vote"—were painted on hollow-core doors that were 2'4" or 2'6" by 6'8".  The 'Toxic Trump' display was 30" by 53". The "Fraser River too" and "The Lying" displays were significantly smaller.

21. Mr. Jensen and Ms. McWilliams both have artistic skills that come from their families and formal study.  Mr. Jensen designed and made all eight of the displays, including selecting and determining the words, font, and orientation.  Specifically, Mr. Jensen used a personally-designed font inspired by R. Crumb's art for the lettering.

22. More than 18 months after the first display was erected, Mr. Jensen received a letter from Fraser Town Manager Jeffrey Durbin, dated September 17, 2018.  This was the first time that either Mr. Jensen or Ms. McWilliams had heard from the Town about their displays.  The

5

50277851.3

letter stated that Mr. Jensen had violated Chapter 19, Article 6, Sections 19-6-250 and 19-6-310 of the Town's municipal code by erecting the signs and that the Town was taking action after receiving what it characterized as "multiple complaints." The letter demanded that Mr. Jensen provide a "satisfactory response" within one week or face prosecution by the Fraser/Winter Park Police Department.

23. On October 26, 2018, Mr. Jensen and Ms. McWilliams met with Town Manager Durbin, Town Planner Catherine Trotter, and Mr. Durbin's assistant Mike Brack. Mr. Jensen and Ms. McWilliams stated that they believed the displays met the Code's definition of "works of art" and were therefore exempt from regulation. Mr. Durbin conceded that their "Toxic Trump" sign might be a "work of art," but maintained that the other displays violated the Code. He told Mr. Jensen and Ms. McWilliams that if Mr. Jensen did not comply with the letter, the Town would issue a citation and send Mr. Jensen to court. Mr. Durbin set a follow-up meeting for November 12, 2018.

24. On November 12, 2018, Mr. Jensen and Ms. McWilliams again met with Town Manager Durbin, Town Planner Trotter, and Mr. Brack. Ms. McWilliams stated that Mr. Jensen and she would remove the displays under threat of prosecution and that she would work with Mr. Jensen to convert the displays into artworks that the Town would consider "works of art." Mr. Jensen and Ms. McWilliams showed Town Manager Durbin four conceptual sketches of the works they intended to post ("Proposed Works"):

6









25. Ms. McWilliams designed and drew all four sketches.

26. Town Manager Durbin said that Mr. Jensen and Ms. McWilliams could not post the Proposed Works because they "will just attract more attention."

27. Ms. McWilliams then said that she thought the Town's actions implicated the First Amendment. Town Manager Durbin replied that if they "were going there, the meeting is over." While leaving the room, Mr. Durbin told Mr. Jensen and Ms. McWilliams to submit a letter detailing their concerns by Friday, November 16.

7

28. On November 16, Mr. Jensen and Ms. McWilliams submitted a letter in response to Town Manager Durbin's actions at the November 12 meeting. The letter discussed why the original displays and the Proposed Works were "works of art" under the Code and were protected expression under the First Amendment.

29. The letter also identified other properties with similar pieces that the Town apparently regarded as "works of art" because otherwise they violate the Code's size, number, and placement restrictions on "signs." For example, a residential property at the corner of Byers Avenue and Norgren Road had works that Mr. Jensen and Ms. McWilliams believed to be two "murals" and five "wall signs."





8

30. Finally, the letter noted that Mr. Jensen had removed the original displays from the flag pole due to the Town's threats of prosecution and had erected the original 'Toxic Trump' display on his shed wall as a "work of art."

31. In response, Mr. Jensen received a letter from Mr. Durbin, dated November 26, 2018, stating that he disagreed that Mr. Jensen's original displays constituted "works of art," but that Mr. Jensen had corrected the Code violation by removing all of the signs from the flag pole. Mr. Durbin also said that the 'Toxic Trump' sign was a "wall sign," not a "work of art," but stated that the letter would serve as a permit for the sign.

32. Mr. Jensen and Ms. McWilliams want to post the three remaining Proposed Works that they showed Mr. Durbin as conceptual sketches at the November 12 meeting on Mr. Jensen's shed wall. However, they have refrained from posting the Proposed Works because of Mr. Durbin's position at the November 12 meeting and in the subsequent November 26 letter that the works were actually "wall signs," not "works of art," and therefore posting them would exceed the limit on "wall signs" and violate the Code.

Facially Unconstitutional Content-Based Regulation of Speech

33. The Code is a facially unconstitutional content-based restriction on speech.

34. The Code is content-based because it exempts certain types of expression from regulation based on the expression's content.

35. Even if the Code were content-neutral, it is not narrowly tailored to advance any possible legitimate interest of the Town. The Code is hopelessly underinclusive, restricting certain signs while not regulating others that would presumably pose similar harms. The Code does not explain why it permits unlimited numbers of artworks and holiday/religious celebration

signs of any size, but substantially limits all other signs, including ideological and political signs. The Code also does not explain why proliferation of "works of art" and holiday/religious celebration signs would not cause visual clutter or detract from the Town's aesthetics.

36. Without any justification, the Code chills peaceful political expression that is squarely protected by the First Amendment and article II, section 10 of the Colorado Constitution.

Unconstitutional Content-Based Restriction on Speech As Applied to Plaintiffs

37. The Code is also an unconstitutional content-based restriction on speech as applied to Plaintiffs.

38. Town Manager Durbin, acting on behalf of the Town of Fraser, used a content-based review to deny Plaintiffs the ability to post their political works of art.  In the November 12 meeting, Mr. Durbin refused to permit Plaintiffs to post their works because, he said, they "will just attract more attention."

39. Other works of art in Fraser similarly use bright colors and combine lettering and imagery.  Therefore, the "attention" to which Town Manager Durbin referred appears to be the works' content.

40. By denying permission because the content was attention-getting, Town Manager Durbin enforced a content-based restriction on speech.

41. Subjecting only political works to regulation because they are 'attention-getting' is not narrowly tailored to any conceivable government interest.  It is similarly underinclusive—excluding many other works that may cause the same harms that the Town ascribes to Plaintiffs' works.  Town Manager Durbin did not provide a constitutionally-valid reason for denying Plaintiffs' artworks.

42. Without any justification, the Town's application of the Code to Plaintiffs has chilled peaceful political expression that is squarely protected by the First Amendment and article II, section 10 of the Colorado Constitution.

Unconstitutional Violation of Due Process

43. The Code is unconstitutionally vague because it fails to define any standard of conduct to which people may conform and encourages arbitrary and discriminatory enforcement, as seen in the Town's enforcement against Plaintiffs.

44. The Code defines "signs" as "any written copy, display, illustration, insignia or illumination used to communicate a message or idea which is displayed or placed in view of the general public . . . ." Fraser, Colo. Mun. Code § 19-6-510.

45. It defines "work of art" as "a sculpture, painting, graphic or other type of art that does not advertise or promote a particular business, service or product." *Id.*

46. There is no ascertainable distinction between the two definitions. The distinction is not the presence or absence of text, because the definitions of 'graphics' and 'written copy' both include text. The distinction is also not the presence or absence of imagery because a 'sign' can be a 'display or illustration' and a 'work of art' can be a 'painting' or 'graphic.' *Id.* The distinction is also not the communication of a message or an idea—even though the Code defines "signs" to do so and does not explicitly define "works of art" to do so—because art communicates ideas and is protected expression.

47. Even though plaintiffs and other homeowners in Fraser have no opportunity to discern whether a piece they would like to post on their property is a "sign" or a "work of art," the Code subjects "signs" and "works of art" to vastly different regulations. A "sign," unless it is

11

one of the exempted categories of signs, is likely subject to size, placement, type, duration, and number requirements.  However, a "work of art" is exempted from all requirements—it can be of any number, size, or type, placed anywhere, for any length of time.

48. The overlapping definitions also provide Town officials with opportunities for arbitrary and discriminatory enforcement.  Specifically, officials appear to make the determination of whether a piece is a "work of art" on a case-by-case basis based on whether the particular official believes the work is 'art.'

49. Town Manager Durbin would not let Plaintiffs post the Proposed Works as "works of art" without offering any rationale for his determination aside from his determination that they "will just attract more attention."  In fact, he said in the October 26 meeting that the original 'Toxic Trump' sign may be a "work of art," but later classified it as a "wall sign" in his November 26 letter.

50. The Code fails to provide notice that is adequate to enable an ordinary person to understand what conduct is prohibited.  It also fails to provide adequate guidance to Town officials, including Town Manager Durbin, resulting in arbitrary and discriminatory enforcement.

## FIRST CLAIM FOR RELIEF
*Fraser Municipal Code Chapter 19, Article 6 Is Facially Unconstitutional  
Under the Free Speech Clause of the First Amendment*

51.   Plaintiffs incorporate the allegations in the foregoing paragraphs of this Complaint here.

52. Plaintiffs have not posted their artworks because of the Town's threat of enforcement, resulting in months of chilled protected political expression.

53. As a content-based regulation on speech, the Code is subject to strict scrutiny. The Town must show that the Code is narrowly tailored to further a compelling interest. The Town cannot meet this standard.

54. The Code has infringed and threatens to continue infringing on Plaintiffs' right to fully exercise their First Amendment rights, including their rights to freedom of speech and freedom of expression.

55. By acting and threatening to act under color of state law to deprive Plaintiffs of rights guaranteed by the Constitution of the United States, the Town has violated, and have threatened to continue violating, 42 U.S.C. §1983.

56. Wherefore, Plaintiffs are entitled to a preliminary injunction, a declaratory judgment, and permanent injunctive relief.

## SECOND CLAIM FOR RELIEF
*Fraser Municipal Code Chapter 19, Article 6 Is Unconstitutional as Applied to Plaintiffs Under the Free Speech Clause of the First Amendment*

57. Plaintiffs incorporate the allegations in the foregoing paragraphs of this Complaint here.

58. The Town, through Town Manager Durbin, conducted a content-based review of Plaintiff's artworks and subjected them to additional regulation as "wall signs" because of their content, which Mr. Durbin deemed attention-getting.

59. Town Manager Durbin imposed stricter regulation on Plaintiffs' artworks after conducting a content-based review. This action fails strict scrutiny. Subjecting Plaintiffs' artworks to regulation while excluding other works and signs from regulation is not narrowly tailored to further any compelling interest.

60. The Town has violated and continues to violate Plaintiffs' right to fully exercise their First Amendment rights to freedom of speech and expression.

61. By acting and threatening to act under color of state law to deprive Plaintiffs of rights guaranteed by the Constitution of the United States, the Town has violated, and have threatened to continue violating, 42 U.S.C. §1983.

62. Wherefore, Plaintiffs are entitled to a preliminary injunction, a declaratory judgment, and permanent injunctive relief.

### THIRD CLAIM FOR RELIEF
*Fraser Municipal Code Chapter 19, Article 6 Is Facially Unconstitutional*
*Under article II, section 10 of the Colorado Constitution*

63. Plaintiffs incorporate the allegations in the foregoing paragraphs of this Complaint here.

64. Plaintiffs have refrained from posting their artworks because of the Town's threat of enforcement, resulting in months of chilled protected political expression.

65. As a content-based regulation on speech, the Code is subject to strict scrutiny. The Town must show that the Code is narrowly tailored to further a compelling interest. The Town cannot meet this standard.

66. The Code has infringed and threatens to continue infringing on Plaintiffs' right to fully exercise their article II, section 10 rights, including their rights to freedom of speech and freedom of expression.

67. Wherefore, Plaintiffs are entitled to a preliminary injunction, a declaratory judgment, and permanent injunctive relief.

### FOURTH CLAIM FOR RELIEF
*Fraser Municipal Code Chapter 19, Article 6 Is Unconstitutional as Applied to Plaintiffs Under article II, section 10 of the Colorado Constitution*

68. Plaintiffs incorporate the allegations in the foregoing paragraphs of this Complaint here.

69. The Town, through Town Manager Durbin, conducted a content-based review of Plaintiff's artworks and subjected them to additional regulation as "wall signs" because of their content, which Mr. Durbin deemed attention-getting.

70. Town Manager Durbin's content-based review of Plaintiffs' artworks fails strict scrutiny. Subjecting Plaintiffs' artworks to regulation while excluding other works and signs from regulation is not narrowly tailored to further any compelling interest.

71. The Town has violated and continue to violate Plaintiff's right to fully exercise their article II, section 10 rights to freedom of speech and expression.

72. Wherefore, Plaintiffs are entitled to a preliminary injunction, a declaratory judgment, and permanent injunctive relief.

### FIFTH CLAIM FOR RELIEF
*Fraser Municipal Code Chapter 19, Article 6 Is Unconstitutionally Vague Under the Due Process Clause of the Fourteenth Amendment*

73. Plaintiffs incorporate the allegations in the foregoing paragraphs of this Complaint here.

74. The Code provides for criminal penalties and considers each day that the violation persists to be a separate violation.

75. The Code, on its face and as interpreted, applied, and enforced by Town officials, fails to provide notice that is adequate to enable an ordinary person to understand what conduct is prohibited.

76. The Code, on its face and as interpreted, applied and enforced by Town officials, fails to establish adequate guidelines to govern law enforcement and thus encourages arbitrary and discriminatory enforcement.

77. The Code is therefore vague in violation of the Due Process Clause of the Fourteenth Amendment.

78. By acting and threatening to act under color of state law to deprive Plaintiffs of rights guaranteed by the Constitution of the United States, the defendant has violated, and has threatened to continue violating, 42 U.S.C. §1983.

79. Wherefore, Plaintiffs are entitled to a preliminary injunction, a declaratory judgment, and permanent injunctive relief.

### SIXTH CLAIM FOR RELIEF
*Fraser Municipal Code Chapter 19, Article 6 Is Unconstitutionally Vague*
*Under article II, section 25 of the Colorado Constitution*

80. Plaintiffs incorporate the allegations in the foregoing paragraphs of this Complaint here.

81. The Code provides for criminal penalties and considers each day that the violation persists to be a separate violation.

82. The Code's overlapping and confusing definitions do not give an average person any chance of understanding what is and what is not prohibited.

16

83. The Code's definitions also do not give Town officials any guidance regarding enforcement of the Code, leading to arbitrary and discriminatory enforcement.

84. The Code is therefore vague in violation of article II, section 25 of the Colorado Constitution.

85. Wherefore, Plaintiffs are entitled to a preliminary injunction, a declaratory judgment, and permanent injunctive relief.

## PRAYER FOR RELIEF

Plaintiffs respectfully request the following relief:

1. A preliminary and permanent injunction enjoining Fraser from (1) enforcing Fraser Municipal Code Chapter 19, Article 6 and (2) targeting political speech for increased regulation by changing its classification;

2. A declaratory judgment that the challenged provisions of the Code, on their face and as the Town has been interpreting and enforcing them, violate the First Amendment; the Fourteenth Amendment; and article II, sections 10 and 25 of the Colorado Constitution;

3. Nominal damages under 42 U.S.C. § 1983;

4. An award of Plaintiffs' costs and reasonable attorney's fees; and

5. Such additional relief as this Court may deem just.

17

| | |
|---|---|
| Dated:  July 25, 2019 | Respectfully submitted,<br><br>/s/ *Christopher M. Jackson*<br>Christopher M. Jackson (#49202)<br>Alyssa L. Levy (#44565)<br>Sherman & Howard L.L.C.<br>633 Seventeenth Street, Suite 3000<br>Denver, CO 80202<br>Tel: (303) 297-2900<br>Fax: (303) 298-0940<br>Email: cjackson@shermanhoward.com<br>           alevy@shermanhoward.com<br>In cooperation with the ACLU Foundation of Colorado<br><br>Mark Silverstein (# 26979)<br>Sara Neel (#36904)<br>American Civil Liberties Union Foundation of Colorado<br>303 E. 17th Ave., Suite 350<br>Denver, CO 80203<br>Tel: (720) 402-3114<br>Fax: (303) 777-1771<br>Email: msilverstein@aclu-co.org<br>           sneel@aclu-co.org<br><br>*Attorneys for Plaintiffs* |

18

50277851.3